PETER THOLL *et al.* v. ANNA KOLES.

· No. 12,803. (70 Pac. 881.)

SYLLABUS BY THE COURT.

1. HIGHWAYS—*Public Lands.* The act of Congress of 1866, giving the right of way for the construction of highways over public lands not reserved for public use (U. S. Rev. Stat. § 2477) is a present grant, and, if accepted by the legislature or the public, in an effectual manner, while the land is a part of the public domain, a highway is established.

2. ———— *Act of Congress of 1866.* The act of Congress, operating with a statute of the state declaring section lines in a county containing public lands to be highways, constituted a dedication and acceptance of public land for a highway, so that when it passed into private ownership it was taken subject to the easement.

Error from Washington district court; HUGH ALEXANDER, judge. Opinion filed December 6, 1902. Reversed.

*Neil F. Graham,* and *H. R. Fulton,* for plaintiffs in error.

*J. W. Rector,* and *J. R. S. Birch,* for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J. : This was an action of Anna Koles to recover damages to her land, resulting from alleged trespass and an attempt by Peter Tholl, the road. overseer, and others, to open a highway claimed to have been previously established.   The land in controversy was inherited by Anna Koles from her father, Joseph Koles, who entered it under the homestead law in 1874, and acquired a patent therefor in 1882.   Soon after settling on the land he planted a row of trees on the east line of the tract, which was a section line, and when the trees grew to sufficient size he used them as posts upon which wires were stretched, and this constituted a fence on that side of the land.

In 1880 a petition for the opening of a section-line road on the east line of his land was presented to the board of county commissioners, and Koles, who then owned the land, was one of the petitioners.   Upon this petition an order appears to have been made by the county board for the opening of the road, but it does not appear that notice of the petition for the highway was duly given, nor that viewers were ever appointed, nor notice given of the time and place when and where the viewers would meet to determine the damages and benefits sustained.   About twenty years afterward, Peter Tholl, the road overseer, acting upon an order made by the township officers, proceeded in good faith to open the road, and did cut down the trees, grade and make a road forty feet wide, for a distance of one-half mile along the east side of the Koles land, one-half of which was taken from said land.

If no highway existed on the line in 1880 when the preliminary steps were taken, it would appear that

the action then taken by the board of county commissioners did not affect the establishment and opening of a highway.  The steps taken did not measure up with the requirements of the statute, and were so defective and insufficient as to be ineffectual.  It is claimed, however, that prior to that time a highway had been established by dedication and acceptance, and, that being true, the overseer and those working with him had a right to open and improve the highway, and were not liable in damages to the owner of the land by reason of their action.

In 1866, while it was government land, and before the rights of Koles or any other settler, had attached, Congress enacted a provision that "the right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted."  (U. S. Rev. Stat. § 2477.)  In 1867 the legislature of Kansas declared all section lines in Washington county to be highways.  (Laws 1867, ch. 67.)  This act was subsequently amended so as to include other counties, but in each of them Washington county was specifically named.  (Gen. Stat. 1868, ch. 89 ; Laws 1869, ch. 57 ; Laws 1871, ch. 135 ; Laws 1872, ch. 177.)  Did the act of congress and the enactment of the Kansas legislature constitute a dedication and acceptance of highways over the public lands in Washington county ?  It is conceded that at the times mentioned the land in question was public land and open to settlement.  No vested interest had been acquired by any one, and it remained subject to the absolute disposing power of congress.

The congressional act of 1866, as will be observed, is in language a present and absolute grant, and the Kansas enactment of 1867 is a positive and unqualified declaration establishing highways on all section

lines in Washington county. The general government, in effect, made a standing proposal—a present grant of any portion of its public land not reserved for public purposes for highways—and the state accepted the proposal and grant by establishing highways and fixing their location over public lands in Washington county. The act of the legislature did not specifically refer to the congressional grants, nor declare in terms that it constituted an acceptance, but we cannot assume that the legislature was ignorant of the grant or unwilling to accept it in behalf of the state for highways. The law of congress giving a right of way for highway purposes over the public lands in Washington county was in force when the legislature acted, and it was competent for it to take advantage of that law, and the general terms employed by it are sufficiently broad and inclusive to constitute an acceptance.

A similar act making section lines public highways was held to be an acceptance of the congressional grant, which became operative at the date of its enactment. It was further held that the act of congress and the local law together constituted a dedication and acceptance, and that persons who thereafter acquired any rights in public lands took them subject to the right of way for highway purposes. (*Wells v. Pennington County*, 2 S. Dak. 1, 48 N. W. 305, 39 Am. St. Rep. 758.) The same question was before the supreme court of Nebraska in 1901, and it was held that the congressional act was a present grant, and that as soon as it was accepted in an appropriate manner by the agents of the public, or the public itself, the highway was established. (*Streeter v. Stalnaker*, 61 Neb. 205, 85 N. W. 47.) In the case last cited there was

no legislative acceptance of the dedication, but only a general user and recognition by the local authorities.

The supreme court of California also holds the view that long-continued user by the public is a sufficient acceptance of the grant. It was said:

"The act of congress of 1866 (sec. 2477, R. S. U. S.) granted the right of way for the construction of highways over public land not reserved for public uses. By the acceptance of the dedication thus made, the public acquired an easement subject to the laws of this state, and the easement not having been extinguished by the operation of such laws, when the defendant acquired the title to the land she took it subject to the easement." (*McRose v. Bottyer*, 81 Cal. 122, 22 Pac. 393.)

In a later case, where there was legislative acceptance of the congressional grant, the supreme court of California affirmed the soundess of the rule of *McRose v. Bottyer*, supra, holding that the act of congress, operating with the statute of the state, constituted a dedication and acceptance of public land for a highway, so that when it passed into private ownership it would be taken subject to the easement. (*Schwerdtle v. County of Placer*, 108 Cal. 589, 41 Pac. 448.)

Our attention has been called to *Carbon C. & M. Co. v. Drake*, 26 Kan. 345; *Hughes v. Milligan*, 42 id. 396, 22 Pac. 313, and *The State, ex rel., v. Spencer*, 53 id. 655, 37 Pac. 147, as authorities against the contention of the plaintiff in error. In these cases it was held that the legislative acts declaring section lines to be highways without making provision for compensation or damages were invalid, but in none of them was the act of congress, or the effect of a congressional grant, considered by the court. Nor does it appear that the act of congress would have had application in those particular cases. It could have no effect

where the lands had ceased to be a part of the public domain before the acceptance by the legislature or the public, nor where private rights and interests had attached to public lands before the enactment.

However, as to lands which were public and which had not been reserved for public use, and where no private rights had intervened before the passage of the law of acceptance, the dedication became complete. In such cases all who acquired title to the land thereafter took it subject to the easement, and, therefore, neither compensation nor viewers to ascertain the same were necessary. The case was tried upon another theory, and the rulings of the court on the testimony in charging the jury were erroneous, and for that reason the judgment will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.