R. N. MOLYNEUX V. RICHARD GRIMES, as Township Trustee, etc.

No. 15,649.   ( 98 Pac. 278.)

SYLLABUS BY THE COURT.

1. HIGHWAYS — Establishment — Public Lands — Acceptance of Congressional Grant—Subsequent Settlement—Easement. An order of a board of county commissioners, otherwise regular, undertaking to establish a highway across public land of the United States operates as an effectual acceptance of the congressional grant of a right of way for the construction of highways (U. S. Rev. Stat. 1878, § 2477), and one deriving title to such land through a settlement subsequently made takes it subject to the easement so created.

2. ———— Record of Notice of Meeting of Viewers. The requirement of the road law (Gen. Stat. 1901, § 6018) that a record of the notice of the meeting of the viewers shall be entered in the commissioner's journal by the county clerk is satisfied by copying the contents of such notice in the journal, no reference to the fact or manner of its publication being required.

3. ———— Publication of Notice of Meeting of Viewers. Inasmuch as the statute does not require proof of publication of such notice to be filed or otherwise made of record in the county clerk's office, the fact that a memorandum made in the journal that the notice was published in a particular manner is not sufficient evidence that no other publication was made to overcome the presumption in favor of the regularity of official proceedings when collaterally attacked.

4. ———— Presentation of Petition — " Regular Meeting " of County Commissioners. The meeting of the board of county commissioners at which they are required to elect a chairman

(Gen. Stat. 1901, § 1636) is a "regular meeting" within the meaning of that phrase as used in the provision that road petitions shall be presented at regular meetings (Gen. Stat. 1901, § 6018), and road viewers be then appointed.

5. ———— *Location — Survey — Irregularity — Proceeding Not Void.* Although the statute requires that ordinarily the county surveyor shall meet with the road viewers, expressly authorizing a survey to be dispensed with only where section-lines are followed, the omission of a survey in any case where the viewers' report shows the exact location of the road is not such a defect as will render the proceedings liable to collateral attack.

6. ———— *Establishment—Report of Viewers Not Conclusive.* The provision of the statute (Gen. Stat. 1901, § 6021) that if the viewers report against a proposed road and the commissioners think such report just no further proceedings shall be had fairly implies that the commissioners may establish the road notwithstanding the adverse report if their opinion is contrary to that of the viewers.

7. ———— *Time for Consideration of Report of Viewers.* The provision of the statute (Gen. Stat. 1901, §6021) requiring the report of the road viewers to be filed on or before the first day of the next session of the county commissioners did not prevent the board from acting upon the report at an adjourned session of the meeting at which the viewers were appointed.

Error from Clark district court; GORDON L. FINLEY, judge. Opinion filed November 7, 1908. Affirmed.

*W. W. Harvey,* for plaintiff in error; *H. J. Bone,* of counsel.

*Francis C. Price,* for defendant in error; *Robert C. Mayse,* of counsel.

The opinion of the court was delivered by

MASON, J.: R. N. Molyneux brought injunction to test whether what was claimed by the township trustee to be a public highway was such in fact. The district court held against him, and he prosecutes error.

Proceedings were had by the board of county commissioners which resulted in the establishment of the

road, unless that result was prevented by some of the considerations now to be stated. They were taken while the land affected belonged to the federal government. The plaintiff's grantors derived title through settlements made after the laying out of the road. He contends that the local officers can not create a highway across land owned by the United States. This contention ignores the effect of the federal statute of 1866 which reads:

"The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." (U. S. Rev. Stat. 1878, § 2477.)

In *Tholl v. Koles,* 65 Kan. 802, 70 Pac. 881, it was held that an act of the legislature declaring certain section-lines across government lands to be public highways operated as an acceptance of this congressional grant and cut off the right of any one subsequently acquiring title to object to the opening of the road or to claim compensation therefor. (See, also, cases cited in 6 Fed. Stat. Ann., pp. 498, 499.) The principle is precisely the same where the action is taken by the county authorities having jurisdiction to establish highways. Several of the cases cited in *Tholl v. Koles, supra,* were of that character. In *Smith v. Smith,* 34 Kan. 293, 8 Pac. 385, it was said that a public road can not be established by prescription or limitation, or through dedication by the occupant, while the land over which the road runs belongs to the United States. There, however, no claim was made under the federal statute, and it was not called to the attention of the court. It would seem that the public might directly accept the offer of congress by general and long-continued use, and some of the decisions collected in the work referred to are to that effect; but whether so or not, it is clear that an effectual acceptance may be made by the officers to whom the matter of establishing highways has been committed by the legislature.

The statute (Gen. Stat. 1901, § 6018) requires that

the county clerk shall give notice of the meeting of the viewers by publication in a newspaper and by advertisement set up in his office and in every municipal township through which the road is designed to be laid out, and that the commissioners shall "cause a record of such notice to be entered on their journal." The plaintiff claims that there was a failure to post the notice in one of the two townships through which the road runs, and a failure to cause a record of it to be entered in the commissioner's journal. No affidavit or other proof of the advertisement was filed or otherwise made of record in the clerk's office. But it was decided in *Crawford v. Comm'rs of Elk Co.*, 32 Kan. 555, 4 Pac. 1011, that this is not necessary. The opinion in that case states that a record of the notice was entered on the journal, without further indicating the character of the entry. An examination of the case-made therein discloses that a copy of the notice was spread upon the commissioner's journal, with no words of introduction or explanation, and with no reference to the manner of giving it publicity. Therefore it is settled that the requirement that a record of the notice shall be entered on the journal is met if the contents of the notice are written there. That was done in this case, and it follows that the objection based on this part of the statute fails.

The only evidence introduced bearing upon the question of how the notice was published was an entry on the clerk's record reading thus: "Notice sent to *Republican Herald* January 15, 1886. Published in *Herald* January 23, 1886, and January 30, 1886. Posted similar notice in clerk's office and in P. O. at Ashland, January 25, 1886." If this were a record required to be made it would doubtless be presumed to be complete and to cover all that was done in that connection. The inference would follow from the mention of a posting in one place that the notice was not posted in any other. But since the law requires no proof of publication to be

recorded by the clerk the entry was a voluntary one, and its failure to state that advertisement was made in more than one township is not sufficient to overcome the presumption in favor of the regularity of official proceedings against collateral attack.

The petition for the road in question was presented at the regular meeting of the board of commissioners in October, 1885, when viewers were appointed. At the meeting of the board held in pursuance of the statute (Gen. Stat. 1901, § 1636) on the second Monday of January, 1886, a new viewer was appointed in place of one who had in the meantime become a member of the board. The plaintiff contends that this appointment was void because not made at a regular meeting of the board. The provisions of the statute bearing on the matter are as follow:

"Upon presentation of any petition for a road . . . to the county commissioners at any regular session of their board, it shall be the duty of said commissioners, if they find the petition to be a legal one, and that the proper bond has been filed, to appoint three disinterested householders of the county as viewers." (Gen. Stat. 1901, § 6018.)

"The board of county commissioners in counties where the population does not exceed twenty-five thousand shall meet in regular session at the county-seat of the county on the first Mondays of January, April, July and October in each year, and in special session on the call of the chairman, at the request of two members of the board, as often as the interests of the county may demand." (Gen. Stat. 1901, § 1616.)

"It shall be the duty of the board of county commissioners to meet on the second Monday in January succeeding their election, or within thirty days thereafter, and organize by electing one of their number chairman, who shall preside at that meeting and at all other meetings during his term of office, if present." (Gen. Stat. 1901, § 1636.)

Obviously the law does not contemplate that the board at its "organization" meeting shall elect a chair-

Molyneux v. Grimes.

man and at once adjourn. The provision that he shall preside at the meeting implies that business is expected to be transacted after his election. · The meeting is one required to be held. The public has notice of the time it is to be held, at least whenever, as in this instance, the date is that specifically named in the statute. It is therefore a regular meeting in the sense that it is one fixed by law to be held on a certain day. We think these considerations make it a regular meeting within the meaning of that phrase as used in section 6018. Other answers to the objection might readily be given, but this is sufficient.

The statute (Gen. Stat. 1901, § 6020) provides that ordinarily the surveyor shall meet with the viewers, but that where the road is upon a section-line the survey may be dispensed with. (Gen. Stat. 1901, § 6018.) Here the principal part of the road as described in the petition lay along section-lines, but for some distance it followed a half-section line. No survey was made, and this is urged as a fatal objection. Such an omission was, however, a mere irregularity, and did not render the proceedings void. The exact line of the road was shown by the viewer's report. For a short way its location was defined by reference to a traveled road then in existence. Such a road may serve the purpose of an artificial monument nearly or quite as well as a surveyor's stakes.

The viewers recommended the establishment of the road for only a part of the distance petitioned for. The plaintiff maintains that they had jurisdiction only to approve or reject it as a whole. The statute, however, provides that they shall in their report state "their opinion in favor of or against the establishment . . . of said road, or any part thereof." (Gen. Stat. 1901, § 6021.) The commissioners established the road for its full length, and the further contention is made that prior to the amendment of 1903 their only authority to create a highway was derived from a favorable report

by the viewers. The statute, so far as important in this connection, reads:

"The viewers shall make and sign a report in writing, stating their opinion in favor of or against the establishment, alteration or vacation of said road, or any part thereof, and set forth the reason of the same, which report shall be delivered to the county clerk by one of the viewers on or before the first day of the session of the county commissioners then next ensuing; and it shall be the duty of the commissioners on receiving the report aforesaid to cause the same to be read before their meeting, and if said report is favorable, and no legal objections appear against said report, and they are satisfied that such road will be of public utility, they shall order said road, survey and plat to be recorded, and from thenceforth said road shall be considered a public highway, . . . but if the report of the viewers be against such proposed road or alteration, and in the opinion of the commissioners said report is a just one, and that such road as applied for is unnecessary, then no further proceedings shall be had thereon." (Gen. Stat. 1901, § 6021.)

It will be observed that the statute does not say that an adverse report of the viewers shall terminate the proceedings, but that if the report is against the proposed road *and* the opinion of the commissioners agrees with that of the viewers no further proceedings shall be had. The fair implication is that if the commissioners think the report unjust they still have discretionary authority to establish the road if by them considered necessary.

The order establishing the road was made at an adjourned session of the meeting at which the new viewer was appointed. The plaintiff argues that the commissioners had no jurisdiction to act upon the report of the viewers because the statute provided that it should be delivered to the county clerk "on or before the first day of the session of the county commissioners then next ensuing." (Gen. Stat. 1901, § 6021.) The argument is that this provision by implication forbade action on the report before the next regular meeting of the board.

We do not think, however, that this is the true construction of the statute, the purpose of which seems merely to have been to limit the time within which the viewers must complete their work.

The final contention is that the road was not opened for travel within seven years from the date of the order establishing it. The evidence, however, seemed to show that it was in fact opened within that time, but perhaps afterward was permitted to remain unused for the period named. This did not work a vacation of the road. (*Eble v. The State,* 77 Kan. 179, 93 Pac. 803.)

The judgment is affirmed.