No. 25,309.

DUNHAM STOCK FARM COMPANY, *Appellant,* v. THE COUNTY COMMISSIONERS OF THE COUNTY OF POTTAWATOMIE, FRANK E. ROWLES et al., *Appellees.*

SYLLABUS BY THE COURT.

1. PUBLIC ROAD—*Lawfully Established—Not Vacated by Terms of Chapter 150, Laws of 1879.* The statute of 1879 (ch. 150) which provided that if a public highway remained unopened for public use for a period of seven years it should be considered vacated, which statute was repealed in 1911, was not in force contemporaneously for a sufficient length of time to have any effect upon a public road lawfully established in 1909.

2. SAME—*Road Not Vacated by Nonuse of Part Thereof.* Where a public road has been lawfully established, the fact that physical obstructions such as hedges and fences may prevent the public use of the road for its entire length does not operate to abandon or vacate the portions of the road unused because of such obstructions.

3. SAME—*Repeal of Statute—No Constitutional Rights of Landowner Infringed Thereby.* A landowner whose land was taken for a public use by lawful proceedings in 1909 had no peculiar proprietary rights arising out of the act of 1879, which provided for the vacation of roads not used for public travel for seven years, nor did the repeal of that statute infringe any constitutional rights of such landowner.

4. SAME—*Subsequent Attempt of County Commissioners to Abandon the Road Ineffectual.* The record concerning a petition for reconsideration of the location of a public road and the action of the county board pursuant thereto,

examined, and held ineffectual to abandon or vacate the road theretofore lawfully established.

5. SAME—*Neglect of Township Officers to Care for Road—County May Lawfully Perform that Duty.* Where the township highway commissioners neglect to place and keep in condition a lawfully established township road, that duty may be lawfully performed by order of the board of county commissioners or the county engineer, and the expenses therefor charged against the township as provided in R. S. 68-124, 68-546.

6. SAME—*Warrant for Damages to Landowner Issued and Not Cashed—No Effect Upon Validity of Road.* The fact that the owner of land taken for a public road never cashed the warrant drawn in his behalf for the sum allowed him as compensation and damages had no effect upon the validity of the proceedings establishing the road.

Appeal from Pottawatomie district court; MARTIN A. BENDER, judge. Opinion filed June 7, 1924. Affirmed.

*Oscar Raines,* of Topeka, and *C. O. French,* of Kansas City, Mo., for the appellant.

*E. C. Brookens, E. S. Francis,* both of Westmoreland, *C. A. Leinbach,* of Onaga, and *A. E. Crane,* of Topeka, for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action to enjoin the county commissioners and the county engineer of Pottawatomie county from opening a public highway running north and south across plaintiff's 1,280-acre ranch in St. Clere township. By proper proceedings begun in 1908 and completed in January, 1909, the road in controversy had been officially declared located and established as a public highway, and an award of compensation and damages therefor in the sum of $750 had been allowed to the then owner, plaintiff's predecessor in title, and county warrants had been drawn and apparently issued in payment therefor, but never presented for payment and never paid.

There was a hedge fence on the north side of plaintiff's ranch, which barred entry at the north end of the road. At the south end of the road was a railway fence. Prior to the establishment of this road in 1909 and at all times thereafter there was and has been some public travel over most of the road. Some people entered the ranch on the north side through a gate about 40 rods east of the north end of the road, and others entered by a gate some 40 rods west of the north end of the road. Such people angled over to its established limits and followed it southward to near its southern limits and then

veered to the east and made their exit through a gate at a railway switch thereabout. Northbound public travel crossed the ranch in the opposite direction over the same general route. There was not very much travel, but "quite a bit of hauling across there and cattle driven across to the railroad and shipped from there every year."

In 1919 a petition of parties interested was presented to the board of county commissioners, praying for the location and establishment of a road across plaintiff's ranch, which brought to light the fact of this road's establishment ten years before, and accordingly the county board notified the trustee of St. Clere township to cause the two blind ends of the road to be opened. The trustee notified the owner of the ranch to open the road. Neither the township trustee nor the ranch owner made any motion towards the physical opening of the two ends of the road, so the county board ordered the work to be done by the county engineer. That officer set about the task, which precipitated this lawsuit.

Issues were joined, evidence for plaintiff and defendants presented, the temporary injunction first allowed was set aside, and final judgment denying an injunction was entered. Plaintiff's motion for a new trial was overruled. Hence this appeal.

Plaintiff first calls our attention to an old statute (Laws 1879, ch. 150), which provided that if a public road should remain unopened for seven years at one time such road would be vacated by operation of law. The point based thereon is not good, for several reasons: The statute was repealed in 1911 (ch. 248, § 55), so there had been no contemporaneous vitality in that statute for a sufficient length of time to bring about a vacation of the road uder its terms. Furthermore, except at the two unopened ends, the road was open for travel and was traveled during all the years since it was officially established in 1909. The fact that physical obstructions like hedges, fences, ravines and the like may prevent the use of the whole extent of a road does not operate to vacate the unused portions of it. (*Rule v. Eagle Township,* 110 Kan. 517, 204 Pac. 684.)

It is suggested that the repeal of the statute of 1879 was ineffectual and void "so far as plaintiff's rights are concerned." Just what this may relate to is not clear. The land required for the road was taken for a public purpose in 1909 by regular and lawful proceedings. If no part of the land taken had been used for public travel during some succeeding period of seven years and the statute of 1879 had remained in force, probably the land taken would have reverted to

plaintiff's predecessor in title. But neither plaintiff nor his prede-
cessor in title had any proprietary rights under the statute of 1879.
The repeal of that statute infringed no constitutional right of the
fee-title holder. Nor can it be admitted that the condemnation
award of $750 was based in part on the consideration that notwith-
standing the land was taken for public use the public might never
use it, and that it might remain unused under the statute of 1879 for
a period of seven years, thereby reverting to the owner of the fee,
and that such possibility was present in the minds of the county
board in fixing the award and damages at $750 and in the mind of
the fee-title holder in acquiescing in it. That sort of reasoning is too
attenuated, too subtle for judicial recognition.

It is contended that the proceedings for the establishment of the
road in 1909 were abandoned. It appears that in April, 1909, a
petition was filed with the county board praying for reconsideration
of the situs of the road, and the commissioners' journal recited,
"After due consideration said reports were upon motion adopted
and the road laid on the section line" (instead of 40 rods to the
west as theretofore declared). Did this operate to set aside the
earlier proceedings? These earlier proceedings were completed and
the road established on January 7, 1909. Thus the road became
a public highway and its public use thereafter was lawful and
proper. The petition of April, 1909, and the action taken thereon
were ineffectual to close the road, and were ineffectual to change
its route and situs. The entry under date of April 9, 1909, in the
commissioners' journal did not profess to be a recital of proceedings
for vacation of the established road as provided by the then exist-
ing statute. (Gen. Stat. 1901, § 6016; *Oliphant v. Atchison Co.*,
18 Kan. 386.)

In *Mills v. Comm'rs of Neosho Co.*, 50 Kan. 635, 32 Pac. 361, it
was held:

"Where the board of county commissioners has confirmed the report of
viewers in favor of a public road, and has ordered it opened, it cannot, at a
subsequent session of that body, without any petition therefor or any notice
thereof, reconsider its action ordering the road opened and vacate said road."
(Syl. ¶ 2.)

Another contention is that if the road was lawfully established it
was a township road under R. S. 68-506 and the county board had
no jurisdiction of it nor authority to open it. The statute relied on
provides that the county board should classify all roads of the

Stock Farm Co. v. Pottawatomie County.

county, according to their relative importance, as "county roads" and "township roads." The defendant board made a classification of roads in obedience to that statute, and the road in controversy was not designated as a county road, consequently (argues plaintiff) it was a township road and the county board had no authority, jurisdiction or official concern with this road. This argument fails to take note of R. S. 68-124, which reads:

"That where under the laws of the state of Kansas, now in existence, or that may hereafter be enacted, any road or highway that is not a county road has been declared to be a public road or highway, it shall be the duty of the board of highway commissioners of the township in which such road is located to repair, place and keep in condition for travel such road or highway. If such board of highway commissioners shall neglect, refuse or fail to comply with the provisions of this act, the board of county commissioners of the county may repair and put in good condition for travel such road or highway, and shall charge the expenses therefor to the township in which such road is located." (See, also, R. S. 68-546.)

The court has not failed to note the curious circumstance that the condemnation money, $750, was never received by the owner of the land in 1909 nor by any of his successors in title. The warrants therefor were drawn, and the stub record shows they were mailed to the proper party to receive them, but never cashed. But that incident is of no consequence here. The present title holder acquired the property charged with notice of whatever public travel there was across the ranch and with notice also of whatever the official county records disclosed concerning it. And we have seen that the record was unassailable and complete, that a public highway was established by authority of law on January 7, 1909 (*Gehlenberg v. Saline County,* 100 Kan. 487, 165 Pac. 286), and the judgment of the trial court was correct.

Affirmed.